IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DENISE ANN OWENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-170-SPS |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Denise Ann Owens requests judicial review pursuant to 42 U.S.C. § 405(g) of the denial of benefits by the Commissioner of the Social Security Administration. She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kiakazi as the Defendant in this action.

engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

Claimant was born on February 7, 1990, and had not attained age 22 as of the alleged disability onset date. (Tr. 1366). She was 32 years old at the time of the most recent administrative hearing. (Tr. 1393). She has completed high school and has past relevant work experience as a grocery store bagger. (Tr. 47, 246, 514, 1418). Claimant alleges she has been unable to work since June 1, 2011, alleging disability due to cerebral palsy, scoliosis, and chronic back pain (Tr. 49-50, 245, 917).

**Procedural History**

Claimant protectively filed her application for child's insurance benefits, a period of disability and disability benefits, and supplemental security income on January 23, 2013, alleging disability beginning June 1, 2011. (Tr. 213-216). Claimant's application was denied. (Tr. 71-96). On June 17, 2014, Claimant appeared for a hearing before Administrative Law Judge ("ALJ") Bernard Porter. (Tr. 42-70). The ALJ issued an unfavorable opinion on September 15, 2014. (Tr. 22-41). On September 16, 2014, Claimant appealed this unfavorable decision. (Tr. 542-546). On September 19, 2017, the United States District Court remanded the case for further administrative proceedings finding the ALJ failed to properly consider Dr. Howard's medical opinion and failing to properly consider the testimony of accommodation provided by Claimant's prior employer in a credibility determination. (Tr. 573-586). On March 2, 2018, the Appeals Council adopted this order, remanding the case to another ALJ, finding Claimant had since filed subsequent Title II and XVI disability claims that had been denied at the hearing level on October 31, 2017. (Tr. 590). The Appeals Council stated, on remand, the ALJ should consider these claims for reopening. (Tr. 590). On August 20, 2018, Claimant appeared again for a hearing before ALJ Michael Mannes. (Tr. 1573-1609). On November 16, 2018, ALJ Mannes issued another unfavorable decision

wherein he reopened the 2017 decision. (Tr. 1425-1449). Claimant again appealed this unfavorable decision. On March 29, 2021, the District Court again remanded this case for further administrative proceedings finding the ALJ erred in failing to analyze Claimant's non-severe mental impairments. (Tr. 1455-1462). On March 29, 2022, the Appeals Council adopted the order of the District Court. (Tr. 1463-1466). On August 10, 2022, Claimant again appeared before ALJ Mannes for a hearing. (Tr. 1393-1424). On August 23, 2022, ALJ Mannes issued another unfavorable decision. (Tr. 1360-1392).

**Decision of the Administrative Law Judge**

In the most recent, August 2022 decision, the ALJ found Claimant was last insured on June 30, 2015, and further, she had not yet attained the age of 22 on June 1, 2011, the alleged disability onset date. (Tr. 1366). The ALJ made his decision at step five of the sequential evaluation. At step two, the ALJ found that Claimant had several severe impairments including lumbar degenerative disc disease (status post L4-L5 to L5-S1 fusion revision), and cerebral palsy. *Id*. The ALJ also noted several non-severe impairments, GERD, depression, anxiety, obesity, and chronic PTSD. (Tr. 1366-1367).

Next, he found that Claimant's impairments did not meet a listing. (Tr. 1371). At step four, he found that Claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) with the following qualifications:

> occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, or crouching; no crawling; occasional overhead reaching bilaterally; frequent handling and fingering bilaterally; and occasional use of foot controls. She must avoid frequent exposure to unprotected heights, unprotected moving mechanical parts, and dangerous machinery; and must avoid frequent exposure to extreme heat and cold. Additionally, for purposes of comfort, she must have a

> sit/stand option, defined as a temporary change in position from sitting to standing and vice versa, with no more than one change in position every 30 minutes and without leaving the workstation as not to diminish pace or production.

(Tr. 1372).

The ALJ also found Claimant had no transferable skills. (Tr. 1381). At Step Five, the ALJ asked the vocational witness to determine whether jobs existed for an individual with the Claimant's age (younger), education (high school), work experience, and the above RFC. (Tr. 815, 1419-1420). The ALJ found there are jobs that exist in significant numbers in the national economy that Claimant can perform. (Tr. 1382). The ALJ found Claimant not disabled. *Id*. On March 30, 2023, the AC denied review of the ALJ's decision. (Tr. 1350-1354). Claimant now appeals the Commissioner's decision and asks this Court for relief.

## Review

The evidence before the ALJ reflects that Dr. Jack Howard observed Claimant's spine had mild kyphosis and increased lordosis noting "very limited" range of motion. (Tr. 335-336)). Given these findings, Dr. Howard found Claimant would have ongoing problems lifting due to pain and persistent lumbar lordosis. (Tr. 336). Dr. Howard also assessed Claimant as having cerebral palsy ("CP"). (Tr. 336).[3]

---

[3] Claimant asserts "Spastic quadriplegic CP is "the most debilitating" form of CP causing chronically stiff limbs by disrupted muscle function caused by brain damage." (Doc. 10, citing https://www.mycerebralpalsychild.org/types/spastic-quadriplegia/ (*last accessed* August 18, 2023). "The spasticity and rigidity causes not only issues with walking, but affects the entire body when bones are pulled by the spastic muscles causing limb and back deformities. Claimant has thoracic scoliosis and exaggerated lordosis of the spine. (Tr. 450, 1011, 1113). The flexibility of the ankle can be affected causing difficulty in raising one's foot forcing a patient to walk on her toes. (Tr. 296, 321-323, 418, 420, 983, 998, 1003, 1707, 1709, 1710). These issues caused a "waddling" spastic gait that presented at first as slow and steady, but eventually presented as an unsteady, diplegic gait, that is paralysis affecting both sides of her body from limbs restricted by muscle contracture. (Tr. 982, 983, 1002, 1022, 1042, 1111, 1232, 1234, 1236, 1734)." *Id.*

Around that same time, Claimant told Dr. Jack Weaver her low back pain had worsened, and x-rays showed mild degenerative changes. (Tr. 331, 333). Through the remainder of 2013, Dr. Weaver recorded antalgic gait at some visits but normal gait at most; Claimant had no muscle spasms or abnormal pain behaviors and exhibited normal posture, toe rise and walk, heel walk, straight leg raises, and sensation. (Tr. 328-29, 332, 405, 408, 411, 416). A lower back magnetic resonance imaging (MRI) study showed moderately severe narrowing of the nerve root openings at one level of her lower back. Claimant then saw Dr. David Malone, who observed she walked with a broad-based spastic-type gait and could not heel walk, but she could toe walk and had full strength (except slight weakness in her feet) and a normal straight leg raise. (Tr. 413-14, 420). Studies showed disc space narrowing and bulges but no discrete herniation. (Tr. 421-22).

As part of Claimant's first disability applications, State agency medical consultants reviewed the record in 2013. Drs. Nancy Armstrong and Kenneth Wainner found Claimant had abilities consistent with a range of light work involving limited overhead reaching. (Tr. 77-79, 102-04).

In mid-2014, neurosurgeon Dr. Thomas Rapacki observed Claimant walked with a limp and had restricted hip and foot range of motion, but she also had a nontender back, a normal straight leg raise, and normal sensation. (Tr. 998-99). Claimant underwent low back surgery in October 2014. (Tr. 437-40). She reported improved symptoms until mid-2015 when she said her pain began worsening. (Tr. 435, 436, 465, 991, 992, 994). Through early 2016, she walked with a limp but had intact sensation and no weakness. (Tr. 465-66, 986, 988, 991, 992, 994).

Claimant first saw APRN Stephanie Ingram as her primary care provider in late 2013. (Tr. 1112). Through 2016, APRN Ingram generally recorded reduced range of motion in Claimant's hips and lower back, as well as a slow but steady gait. (Tr. 432-33, 1011, 1017, 1022, 1041-42, 1111, 1113,

1120, 1175). Claimant reported "moderate" relief with relaxation, rest, and medication, which she said "help[ed] control her pain." (Tr. 431, 1010).

In 2016, imaging showed loosening of a screw from Claimant's prior surgery. (Tr. 1238). She walked with a limp and a slightly forward flexed posture but had full strength and intact sensation. (Tr. 1238-41). Dr. Scott Dull performed a revision low back surgery in April 2016. (Tr. 1015, 1238). Post-surgery, Claimant displayed slow but steady gait, full strength, intact sensation, normal posture, and a normal straight leg raise. (Tr. 1024-25, 1232-37). She reported improvement. (Tr. 1234-36, 1412-13).

In late 2016, consultative examiner Dr. Christopher Sudduth observed Claimant walked with an asymmetric, steady, slow gait. (Tr. 1002). She could not squat or walk on her heels and toes, and she displayed "profound decrease" in lower back range of motion, an abnormal straight leg raise, and reduced right leg range of motion. (Tr. 1002-03). She had no muscle spasms and full (5/5) strength throughout, with normal sensation. (Tr. 1002). Claimant could lift, carry, and handle light objects; rise from sitting without assistance; and get up and down from the exam table without difficulty. (Tr. 1022). Around this same time, Claimant told APRN Ingram she was walking one mile three times per week for physical therapy. (Tr. 1015, 1018).[4]

State agency medical and psychological consultants reviewed the record in 2016 and 2017 as part of Claimant's 2016 applications. Dr. Evette Budrich and Dr. Herbert Meites found Claimant had abilities consistent with a range of light work. (Tr. 622-26, 656-60, 1275). Dr. Mary Rolison found she

---

[4] Claimant alleges "the same citation the ALJ provided to use this finding indicates Claimant was suffering from severe pain, numbness, wearing a stimulator daily, and taking hydrocodone 7.5 mg. every six hours. (Tr. 1015). Nonetheless, in the context of physical therapy, she walked a mile three times a week. *Id.* The record does not make clear whether her gait is stable or not, how long it took her to walk a mile, or even how long she sustained her therapy. The ALJ's conjecture that her ability to engage in physical therapy for her own well-being three times a week for an undetermined time is inconsistent with Nurse Ingram's opinion that Claimant is incapable of sustaining work on a continuing basis is simply an unfounded conclusion." (Doc. 17 at 8).

did not have a mental medically determinable impairment (MDI), while Dr. Laura Eckert found she had mental MDIs that were not "severe." (Tr. 620-21, 654-55).

After Claimant's subsequent disability applications were denied in 2017, she displayed spastic gait at her visits with APRN Ingram. (Tr. 1707, 1710, 1722, 1726, 1730, 1734, 1739, 1743, 1748). Later in 2017, APRN Ingram opined that, due to chronic pain caused by CP and failed healing of a broken bone (pseudarthrosis) in her lower back, Claimant experienced extreme limitations that would effectively preclude competitive employment. (Tr. 980-83).

Claimant sought treatment for her physical conditions after 2017. (Tr. 1402). For pain relief, she used medical marijuana and Gabapentin. (Tr. 1401, 1624). In 2021 and 2022, she said she "stay[ed] busy" so as not to relive several traumatic events. (Tr. 1664, 1672, 1685).

At the August 10, 2022, administrative hearing, Claimant testified she stopped working because she was "having consistent back pain that she couldn't get to go away." (Tr. 1400). She has had two back surgeries in 2014, and 2016. (Tr. 1400-1401). She was born with cerebral palsy, wears a back brace and uses a cane to ambulate. (Tr. 1402-1403). Claimant testified she has "what is called spastic cerebral palsy, or quadriplegic…. [which] affects all four extremities... with particular problems with [her] right side." (Tr. 1409). She testified she can't use her right arm because it is very weak. (Tr. 1409). She testified she needs to stand or sit every ten to fifteen minutes to get comfortable, and she uses a shower chair. (Tr. 1406). She has back spasms that radiate to her legs causing tension and muscle cramping. (Tr. 1413).

She also testified she quit working due to back pain, and that her last employer gave her accommodations to get through the day. (Tr. 1408). Her employer would allow her to be placed on light duty and go home when necessary. She testified she was going home two to three times per week. (Tr. 1409). Claimant had a traumatic experience that she testified is causing her nightmares, night sweats, headaches, and tightness in her chest. (Tr. 1414-1415). She has a 15-

year- old son who is home schooled, and her sister helps her with her monthly expenses. (Tr. 1404). She also testified she is moving in with her sister due to health reasons. (Tr. 1416).

Claimant contends, *inter alia*, that the ALJ failed to apply the correct legal standards when assessing the medical opinions of record. Under the regulations governing this case, the ALJ had to weigh every medical opinion. *See* 20 C.F.R. § 404.1527. As relevant here, a "medical opinion" is a statement from an acceptable medical source that reflects judgment about the nature and severity of the claimant's impairments including her symptoms, diagnosis, and prognosis; what she can still do despite her impairments; and her physical or mental restrictions. *Id*. §404.1527(a)(1). The agency has issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules). Because Claimant filed her initial applications in 2013, this matter is governed by 20 C.F.R. § 404.1527.

In this case, the ALJ failed to provide specific, legitimate reasons for rejecting both Nurse Ingram's opinion and consulting physician Dr. Howard's opinions. (Tr. 1379-1380). Despite citing to specific citations in the record noting Claimant's spastic, diplegic, antalgic, gait and being unable to walk on her heels, the ALJ cites only vaguely to entire exhibit books to find Claimant was "in no acute distress" to provide the providers' opinions little weight. *Id.* Likewise, consultative examiner Dr. Howard assessed Claimant would have ongoing problems lifting due to increased back pain in her lumbar spine given her lumbar lordosis and cerebral palsy, assessing a very limited range of motion in her back. (Tr. 336, 337, 340). Instead of analyzing whether Dr. Howard's specific finding was supported and consistent with the record, or if the opinion follows the other factors outlined in 20 CFR §§ 404.1527 and 416.927, the ALJ instead found the opinion was not afforded great weight given Claimant rarely, if ever, demonstrated decreased strength in

her upper extremities. (Tr. 1376). The ALJ noted generally that Claimant's inability to lift could not be attributed to pain as Dr. Howard personally assessed because Claimant's statements as to the efficacy of her treatment was inconsistent with her allegations of pain from her prior hearings. *Id*. However, the ALJ provided no specific citations to the record. (Tr. 1376). In contrast, Claimant has been consistent in her allegations of pain and weakness affecting her back and ability to grip or lift during her testimony in each of her hearings. (Tr. 891, 1410, 1413, 1585, 1587, 1594); *Sitsler v. Astrue*, 410 Fed.Appx. 112, 117-118 (10th Cir. 2011) (criticizing ALJ's mischaracterization of the evidence).

Here, a reviewing court cannot be assured the ALJ considered the evidence favorable to Claimant. *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996). The ALJ merely presented a conclusion beyond meaningful judicial review. *Id.* The ALJ found Claimant retains the RFC necessary to perform sedentary work. (Tr. 1372). However, his analysis is lacking evidentiary support necessary to support this conclusion. *SSR* 96-8p (the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing medical facts and nonmedical evidence).

Defendant argues the error in this case is harmless error because substantial evidence demonstrates Claimant can perform sedentary work given the medical evidence demonstrated ostensibly normal clinical findings on exam, including normal gait, a normal straight leg, no muscle spasms, an ability to toe rise, walk heel walk, normal strength, normal reflexes, and spinal stability. However, in this case, the ALJ failed to meet his Step Five burden of proof to produce substantial evidence that Claimant has retained the RFC to perform work on a regular and continuing basis with these intermittent findings. *SSR* 96-8p

In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, for five days a week, or an equivalent work schedule, and describe the maximum amount of each work-related activity the individual can perform based on the record. The ALJ must also explain any material inconsistencies or ambiguities in the record were considered or resolved. *See SSR* 96-8p. In the instant case, the ALJ cites ambiguities, but does not explain why Nurse Ingram's findings should be provided little weight or how he assessed Claimant can stand and/or walk for two hours out of an eight-hour workday on a regular and continuing basis while appropriately accommodated with a sit/stand option. (Tr. 1372). Further, the ALJ does not properly explain how he determined with specific evidence from the record that Claimant can occasionally reach overhead and lift up to ten pounds occasionally while walking. *SSR* 83-10p.

The decision of the Commissioner is accordingly reversed, and the case remanded to the ALJ, *inter alia*, for an explanation linking medical and nonmedical evidence to his decisional RFC. The ALJ should include all impairments, both severe and non-severe in any hypothetical questions posed to a vocational expert at step five. The ALJ should then redetermine what work, if any, Claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision

-12-

of the Commissioner is hereby REVERSED, and the case REMANDED for further proceedings consistent herewith.

**IT IS SO ORDERD this 31st day of July, 2024.**

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma